**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                            :
JAMES BARNES,                               :
                                            :
      Plaintiff,                        :    Civil Action No. 06-5704 (FLW)
                                            :
      v.                                :
                                            :    **OPINION**
MERCER COUNTY CORRECTIONAL                  :
CENTER,                                     :
                                            :
      Defendant.                        :
_____:

**WOLFSON, United States District Judge**

    Presently before the Court is a motion for summary judgment by Defendant Mercer County Correctional Center ("Defendant" or "MCCC" or "Facility" ) to dismiss the pro se complaint of Plaintiff, James Barnes ("Plaintiff" or "Barnes" ).  Plaintiff, who is currently incarcerated in the New Jersey State Prison system, alleges constitutional violations pursuant to 42 U.S.C. § 1983.  Specifically, Barnes complains that Defendant: (1) denied him medical treatment for an injury Plaintiff received during a fight with several other inmates on a van ride en route from the Trenton Police Department to MCCC, and (2) did  not allow him to see a representative from Internal Affairs for fifteen days.  Defendant argues that it is entitled to judgment as a matter of law because:  (1) at all times relevant to this matter Plaintiff was in the custody of the Trenton Police

Department; (2) there was no deliberate indifference on the part of Defendant to Plaintiff's injuries; (3) fifteen days is not an unreasonable amount of time for an internal affairs investigation to take place; and (4) there are no genuine issues of material fact. Plaintiff filed an Opposition to Defendant's Motion and a Cross-Motion for Summary Judgment.  For the reasons stated herein, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Cross-Motion.

I.     BACKGROUND AND PROCEDURAL HISTORY

On February 2, 2005, Plaintiff was arrested by Trenton Police officers on charges of gun possession.  See Ex. C; Pl. Dep. 15:17.  The next day, while the Trenton Police were transporting Plaintiff in a van from the Trenton Police Department to MCCC, Plaintiff was involved in a fight with approximately six other inmates.  See Ex. C; Pl. Dep. 19:6-12, 17:1-8.  Plaintiff admits that he was in the custody of the Trenton Police Department during this transport to MCCC.  Pl. Dep. 17:16-18.  As a result of this fight, Plaintiff sustained an injury to his nose and he was bleeding profusely.  See Ex. C; Pl. Dep. 24:22-23. Upon arrival at MCCC, a nurse arrived to check all the inmates, pursuant to the written policy at MCCC, which provides that no inmate shall be accepted into the Facility if he is in need of immediate medical attention.  SOP 308: B3; see Pl. Dep. 23:4-16.  Plaintiff was not permitted entry to the facility because of his nose injury.   See Pl. Dep. 23:4-16.  He was then transported, again by the Trenton Police officers, back to the Trenton Police Department where he was allegedly placed in a cell for approximately one hour before he was transported to Helene Fuld Medical Center ("Helene Fuld") to receive medical treatment.  See Ex. C; Pl. Dep. 25:6-12.  Plaintiff alleges that when he was

2

transported to Helene Fuld Medical, his handcuffs were on too tight and despite his complaints the two police officers did nothing. See Pl. Dep. 26:13-25. Upon his arrival at the hospital, Plaintiff allegedly spent approximately 30 to 40 minutes in the waiting room. See Pl. Dep. 27:20-25. According to Plaintiff, he again told the two officers and a nurse that the handcuffs were too tight and asked that they be loosened, but the officers and the nurse refused. See Pl. Dep. 28:2-12. As a result, Plaintiff claims that the handcuffs left bruises and cuts on his arms. See Pl. Dep. 29:7-24. Although Plaintiff was treated at Helene Fuld for the wound to his nose, he does not recall if the nurse looked at the injuries to his wrists. See Pl. Dep. 28:21-25. After Plaintiff was treated, he was transported back to MCCC and accepted into the Facility. See Pl. Dep. 30:8-19. At that time, Plaintiff saw Sergeant Thomas and told her that he wanted to see Internal Affairs to file a complaint of assault because Officer Kelsey and an unknown second officer placed the handcuffs on his wrists too tightly and refused to loosen them, which resulted in cuts and bruises to his arm. See Pl. Dep. 30:8-19; Pl. Dep. 31:28-32:2. Plaintiff also wanted to report the "negligence" of the nurse at MCCC and Trenton Police for failing to provide him with immediate medical attention. Pl. Dep. 31:28-32:2. Plaintiff alleges that he did not see anyone from Mercer County Internal Affairs or Trenton Police Internal Affairs until 15 and 16 days later, respectively. Id. When Plaintiff saw a representative from Trenton Police Internal Affairs, (Exhibit "D" Tr. 36:3-14), photographs were taken of Plaintiff's nose and wrists. See Pl. Dep. 36:15-25; Ex. C. Plaintiff alleges that he was questioned by Trenton Police Internal Affairs twice, once at Mercer County Correctional Center and once at Trenton State Prison. See Pl. Dep. 38:12-25, Ex. C. Plaintiff claims that although Trenton Police Internal Affairs said they would get back to him, they never

investigated the situation.  Id.

On December 4, 2006, Barnes filed a Complaint [1] against Defendant pursuant to 42 U.S.C. § 1983, on the grounds that: (1) 15 days for MCCC's Internal Affairs to begin an investigation and 16 days to see someone from Trenton Police Department's Internal Affairs is an unreasonable amount of time, and (2) Defendant was deliberately indifferent to his serious medical needs because it refused to provide him with medical attention when he was bleeding profusely from his nose.  On September 12, 2008, Defendant filed a motion for summary judgment arguing that:  (1) at all times relevant to Plaintiff's injury and receipt of medical attention, Plaintiff was in the custody of the Trenton Police Department; (2) Defendant was not deliberately indifferent to Plaintiff's injuries; (3) fifteen days is not an unreasonable amount of time for an internal affairs investigation to take place; and (4) there is no genuine issue of material fact and therefore MCCC is entitled to judgment as a matter of law.  Plaintiff filed opposition to Defendant's Motion and his own Cross-Motion for Summary Judgment. This Court has jurisdiction over this § 1983 claim pursuant to 28 U.S.C. § 1331.  For the reasons stated herein, the Court grants Defendant's Motion for Summary Judgment and denies Plaintiff's Cross-Motion.

**II.    SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330

---

[1] Since the Plaintiff is a pro se litigant, the Court is obligated to construe his pleadings liberally.  Haines v. Kerner, 404 U.S. 519, 520 (1972); Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2004) ("[The Court will] apply the applicable law, irrespective of whether the pro se litigant has mentioned it by name.").

4

(1986). A fact is material only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. Celotex, 477 U.S. at 330. Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999). A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002).

The motion is appropriately granted when that party is entitled to judgment as a matter of law. Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 175 (3d Cir. V.I. 1990). Even if a record contains facts that might provide support for a non-movant's position, "the burden is on the [non-movant], not the court, to cull the record and affirmatively identify genuine, material factual issues sufficient to defeat a motion for summary judgment." Morris v. Orman, No. 87-5149, 1989 WL 17549, at *8

(E.D. Pa. Mar. 1, 1989) (citing Childers v. Joseph, 842 F.2d 689 (3d Cir. 1988)); see also Atkinson v. City of Phila., No. 99-1541, 2000 WL 793193, at *5 n. 8 (E.D. Pa. June 20, 2000).

### III.   DISCUSSION

Section 1983 of Title 42 of the United States Code authorizes a person such as Plaintiff to seek redress for a violation of his federal civil rights by a person who was acting under the color of state law.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory….subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To recover under 42 U.S.C. § 1983, a plaintiff must show two elements: (1) a person deprived him or caused him to be deprived of a right secured by the Constitution or laws of the United States, and (2) the deprivation was done under color of state law.  See West v. Atkins, 487 U.S. 42, 48 (1988); Adickes v. S.H. Kress & Co., 398 U.S. 144, 152 (1970); Sample v. Diecks, 885 F.2d 1099, 1107 (3d Cir. 1989).

A jail is not a "person" amenable to suit under 42 U.S.C. § 1983.  See Marsden v. Federal BOP, 856 F. Supp. 832, 836 (S.D.N.Y. 1994) (county jail not an entity amenable to suit under 42 U.S.C. § 1983); Powell v. Cook County Jail, 814 F. Supp. 757, 758 (N.D. Ill. 1993) (Cook County Jail not a "person" under § 1983); McCoy v. Chesapeake Correctional Center, 788 F.Supp. 890, 893-94 (E.D. Va. 1992) (local jail not a "person" under § 1983); Vance v. County of Santa Clara, 928 F. Supp. 993,995 (N.D. Cal. 1996) (county department of corrections is an agency of the county and cannot be sued

separately from the county under § 1983); Mayes v. Elrod, 470 F.Supp. 1188, 1192 (N.D. Ill. 1979) (county department of corrections not a suable entity separate from the county). However, since Plaintiff is a pro se, the Court will construe his claim liberally and treat the claim against MCCC as an attempt to assert a claim against the County of Mercer ("County"). Haines v. Kerner, 404 U.S. 519, 520 (1972); Dluhos v. Strasberg, 321 F.3d 365, 369 (3d Cir. 2004).

Even if the complaint is construed liberally and treated as a claim asserted against the County, Plaintiff cannot prevail. While a local government entity "cannot be held liable soley because it employs a tortfeasor", Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. at 658, 691(1978), it can be found liable under § 1983 if certain criteria are met. To state a cause of action against a municipality under § 1983, a plaintiff must plead and prove that his injury resulted from an "official custom or policy" of the municipality." Id. at 658. "It is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts and acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694. Thus, for Plaintiff to prevail on his claims against the County, Plaintiff must show that: (1) there was a violation of his constitutional rights, and (2) the County's policy or custom caused the violation. See Pobursky v. Madera County, No.07-0611, 2007 WL 2023529, at *6 (E.D. Cal. July 12, 2007); see also Monell, 436 U.S. at 690-92.

Here, Plaintiff has failed to allege or demonstrate that his constitutional rights were violated as a result of the execution of a policy or custom of MCCC. Because MCCC's policy appears to be reasonable and rationally related to a legitimate

7

government objective, it is not unconstitutional.  Since there are no affidavits supporting MCCC's brief with regard to its policy, and the Court cannot rely on Defendant's brief alone, the Court must conduct its own analysis of MCCC's policy to determine if the policy caused a violation of Plaintiff's constitutional rights.  According to N.J.A.C. 10A: 31-21.1, each adult county correctional facility should develop written policies and procedures regarding the admission of new inmates.  As a result, MCCC adopted a policy stating that no inmate is to be accepted into the facility if he is in need of immediate medical attention.  SOP 308: B3.  It is well known that jails, at times, need to send prisoners to outside medical facilities for treatment.  It appears that the County has adopted this policy because the medical department at MCCC, based on its sheer size, is limited and simply cannot provide the treatment and same extensive resources as that of an outside medical facility.  Because it would be burdensome and impractical for MCCC to treat all current prisoners and incoming prisoners that need immediate medical attention, this policy appears to be reasonable and thus does not violate Plaintiff's constitutional rights.

In this case, when Plaintiff arrived at MCCC he was in need of immediate medical attention, as he was bleeding profusely from his nose.  The nurse who was on duty checked all the inmates and denied Plaintiff admittance in accord with MCCC's policy.  The nurse did not know the extent of his injuries and could only see that he needed immediate medical care.  MCCC denied Plaintiff admittance so he could be taken to a medical facility as quickly as possible where he would have access to the best and most appropriate care and treatment for his injury.   Plaintiff admits that when he arrived at MCCC he was in the legal and physical custody of the Trenton Police Department.

Since he was not in the custody of MCCC when the injury occurred, it is possible that it would have actually delayed his treatment if MCCC had to go through the process of admittance and transferring custody from Trenton Police Department to MCCC before sending him to the hospital or otherwise providing him with medical care. MCCC had no reason to believe that the Trenton Police Department would do anything other than immediately take Plaintiff directly to the hospital. Thus, the policy as applied to Plaintiff is constitutional.

Plaintiff also alleges that he was denied medical treatment and care by the Trenton Police Department. However, the Trenton Police Department's actions after MCCC denied admittance are not before the Court because even though Plaintiff admits that he was in the custody of the Trenton Police Department at the time, he does not name the City of Trenton or any other individual officers as defendants in his Complaint. MCCC is not responsible for the City of Trenton's actions while Plaintiff was in its custody.

Plaintiff further complains that the nurse at the hospital failed to provide him with medical treatment for his wrists, but concedes that he is not sure whether or not the nurse actually treated the injury to his arms and wrists. Regardless, because Plaintiff fails to bring any claims against the nurse or Helene Fuld, this claim need not be addressed further. Because, as discussed herein, MCCC's policy and the manner in which it was applied to Plaintiff is not unconstitutional, the Court finds that under the principles of Monell, MCCC cannot be held vicariously liable for Plaintiff's § 1983 claims.

Even if Plaintiff could get past Monell's proscriptions, Plaintiff's claims still fail.

9

Plaintiff alleges that he was denied medical treatment for his injuries and MCCC was "deliberately indifferent" to his medical needs. The Eighth Amendment's cruel and unusual punishment clause is violated by "deliberate indifference to serious medical needs of prisoners.", City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 243-44, 103 S. Ct. 2979, 77 L.Ed.2d 605 (1983) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 50 L.Ed.2d 251 (1976)), but the clause, does not, apply until 'after sentence and conviction.'" Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005) (Hubbard I) (quoting Graham v. Conor, 490 U.S. 386, 392 n. 6 (1989)).  Because Barnes was a pre trial detainee when he was allegedly denied medical care, the Eighth Amendment is not directly applicable.[2]  See City of Revere, 463 U.S. at 243-45, King v. County of Gloucester, No. 07-3954, 2008 WL 5158744 at *3.  Rather the Due Process Clause of the Fourteenth Amendment applies in this case and requires the responsible government agency to provide medical care to pre trial detainees because the failure to do so amounts to punishment without adjudication of guilt.  King v. County of Gloucester, 2008 WL 5158744, at *3 (citing Hubbard I, 399 F.3d at 166).[3]  In Bell v. Wolfish, 441 U.S. 520, 539 (1979), the Supreme Court explained:

> "[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to

---

[2] In this case, the events occurred the day after Plaintiff was arrested on gun possession charges.  Indeed Plaintiff was not a sentenced prisoner, but rather a pretrial detainee.

[3] "(T)he State does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured a formal adjudication of guilt in accordance with due process of law.  Where the State seeks to impose punishment without such an adjudication, the pertinent constitutional guarantee is the Due Process Clause of the Fourteenth Amendment." Bell v. Wolfish, 441 U.S. 520, 537, n. 16 (1979) (quoting Ingraham v. Wright, 430 U.S. 651, 671-72, n. 40 (1977)); see also City of Revere v. Massachusetts General Hospital, 463 U.S. 239, 244 (1983).

10

> "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal - if it is arbitrary or purposeless - a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees."

With regard to the denial of medical care to a pretrial detainee, however, the standard is more complex. In King, the Third Circuit held:

> [T]he inquiry is whether the denial was imposed for the purpose of punishment or whether it (was) but an incident of some other legitimate governmental purpose….That inquiry involves an indirect application of the Eighth Amendment deliberate indifference standard….the Supreme Court has concluded that the Fourteenth Amendment affords pretrial detainees protections "at least as great as the Eighth Amendment protections available to a convicted prisoner," without deciding whether the Fourteenth Amendment provides greater protections.

King, 2008 WL 5158744, at *3 (internal quotations & citations omitted). Since the Fourteenth Amendment in the context of denial of medical care incorporates the protections of the Eighth Amendment, the Court will evaluate Plaintiff's Fourteenth Amendment claim under the deliberate indifference standard of the Eighth Amendment. See Simmons, 947 F.2d at 1067 (the rights of a detainee are at least as great as those of convicted prisoners).

In sum, in order for a pretrial detainee to establish a violation of his constitutional right to adequate medical care, he must show a serious medical need, and acts or omissions by prison officials that indicate deliberate indifference to that need. Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Natale, 318 F.3d at 582. "A serious medical need is 'one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity of a doctor's

11

attention.'" Potter v. Deputy Attys, No. 08-1762, 2008 U.S. App. LEXIS 26266, at *7-10 (3d Cir. Dec. 23, 2008) (quoting Monmouth Cty. Correctional Inst. Inmates v. Lozano, 834 F.2d 326, 347 (3d Cir. 1987)).  Deliberate indifference is a "subjective standard of liability consistent with recklessness as that term is defined in criminal law." Nicini v. Morra, 212 F.3d 798, 811 (3d Cir. 2000).  The phrase also refers to "a state of mind more blameworthy than negligence." Farmer v. Brennan, 511 U.S. 825, 835 (1994).

Here, Plaintiff was involved in an altercation with other inmates while in the custody of the Trenton Police Department, and he injured his nose.  Due to the nature of Plaintiff's injury, he was bleeding profusely; it was obvious that he was in need of medical attention.  Upon arrival at MCCC, due to its policy, Plaintiff was refused admittance.  Assuming that Plaintiff's injury was a serious medical need, nonetheless MCCC's policy and actions towards Plaintiff do not amount to deliberate indifference to that medical need.  As discussed herein, MCCC's policy appears to be reasonable and is not punitive in nature.  MCCC's policy was adopted because its medical department is very limited and simply cannot provide the type of treatment that a proper medical facility could provide.  See Df. Mot. at 4.  Thus, it appears that the reason for this denial of medical care and policy was not to punish Plaintiff, but to ensure that he was provided with the best and most appropriate care and treatment for his injury.  The slight time delay involved in transporting plaintiff to a local hospital, which benefited plaintiff by providing him with full-scale hospital treatment rather than the limited treatment available at MCCC, cannot rationally be seen as constituting deliberate indifference by MCCC.  The actions of MCCC were prompt and reasonable and allowed the Trenton Police, who had custody of Plaintiff, to take Barnes to get competent medical treatment

at Helene Fuld. MCCC's refusal to admit Plaintiff into its facility was not a reckless disregard of Plaintiff's serious medical need. Rather, it was an attempt to provide him with the fastest and best medical care possible. Based on these facts, it is clear that MCCC did not deny Plaintiff access to treatment, he was only denied admittance to the facility with the intent for him to receive more appropriate treatment elsewhere. Plaintiff was treated for his injury, and thereafter he was admitted into the Facility. Thus, denial of access to the Facility due to his immediate need for medical attention is a reasonable policy, and without more, does not amount to a violation of Plaintiff's constitutional rights.

Moreover, MCCC is not responsible for any subsequent injuries or alleged negligence that may have occurred while Barnes was in the custody of the Trenton Police Department. MCCC had no reason to believe that the Trenton Police Department would do anything other than take Plaintiff, who was in its custody, directly to get the best and most appropriate medical care. In addition, since Barnes was not in the custody of MCCC when the injury occurred, it is possible that transferring custody before providing medical attention could have delayed Plaintiff's treatment even further. Therefore, since the Trenton Police Department already had custody of Plaintiff, it was reasonable for MCCC to deny admittance so that the Trenton Police Department could take Plaintiff to get immediate treatment at a local hospital. Accordingly, MCCC's policy and actions were not reckless, appear to be reasonable, and do not amount to deliberate indifference to the Plaintiff's serious medical needs. Thus, the Court grants Defendant's Motion with respect to this claim.

Second, the Court will address the Plaintiff's claim that his rights were violated

because he was not contacted by someone within MCCC's Internal Affairs until 15 days after the incident. Accepting Plaintiff's allegation as true, he nonetheless fails to state a claim. Plaintiff has no constitutional right to have officials investigate or respond to administrative grievances. See Smith v. H.C. Prosecutors Office, No. 08-2551, 2008 U.S. Dist. LEXIS 55660, at *10 (D.N.J. July 15, 2008). A failure to respond to an inmate's grievances "does not violate his right to due process and is not actionable." Id. (quoting Stringer v. Bureau of Prisons, 145 Fed. Appx. 751, 753 (3d Cir. 2005)). In this case, someone at MCCC's Internal Affairs did in fact meet with Plaintiff, and a two week delay is not unreasonable.[4] Therefore, Plaintiff has no cause of action for this claim and it is dismissed.

## IV.   CONCLUSION

Accordingly, Defendant's Motion for Summary Judgment is granted and Plaintiff's Cross-Motion is denied.

/s/   Freda L. Wolfson
The Honorable Freda L. Wolfson
United States District Judge

Dated:   April 16, 2009

---

[4] Plaintiff's claim that his rights were violated because he was not contacted by someone within Trenton Police Department's Internal Affairs until 16 days after the incident is also dismissed. As discussed herein: (1) Plaintiff has no constitutional right to have officials investigate or respond to administrative grievances, (2) MCCC has no control over the Trenton Police Department's activities, and (3) The City of Trenton or Trenton Police Department were not named as defendants.

14